UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

VICTORIA J. BELL,

                           Plaintiff,

          -against-                                    5:15-CV-01160 (LEK)

CAROLYN W. COLVIN,
Commissioner of Social Security,

                           Defendant.

_____

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

          This case has proceeded in accordance with General Order 18, which establishes the

procedures applicable to appeals from denials of Social Security benefits. Both parties have filed

briefs. Dkt. Nos. 20 ("Plaintiff's Brief"), 23 ("Defendant's Brief"). For the following reasons, the

decision of the Social Security Administration ("SSA") is vacated and this case is remanded for

further proceedings.

## II.     BACKGROUND

### A.  The Disability Allegations[1]

          Plaintiff Victoria J. Bell was born on August 28, 1972. R. at 67. Bell claims that she

became disabled on November 1, 2004, as a result of several physical and mental ailments,

including migraine headaches, back pain, carpal tunnel syndrome, intellectual disability, anxiety,

and depression. Id. at 72, 123.

---

          [1]  Because this appeal involves the period between November 1, 2004, and May 1, 2006,
Pl.'s Br. at 5, the Court limits its discussion of the facts to those relevant to that period of time.
As discussed below, Bell has already been found to be disabled beginning May 1, 2006. R.
at 343.

Bell graduated from high school on June 24, 1990, receiving an individualized education plan diploma. Id. at 62, 132, 206. She testified that she was placed in special education classes for "reading, math, social studies, [and] science." Id. at 329. When Bell was fifteen years old, she underwent an intelligence evaluation. Id. at 736–37. The examiner found that she was "functioning overall within the low average range of intellectual ability," with a verbal IQ of 78, a performance IQ of 96, and a full scale IQ of 85. Id. at 738. The examiner suggested that Bell might be a "dependent child" suffering from "family dysfunction" as well as "compulsiveness, impulsivity[, and] limited accessibility." Id. at 741. On May 11, 2006, Dr. Jeanne A. Shapiro found that Bell had a full scale IQ of 65. Id. at 213. Dr. Shapiro also noted that Bell was capable of dressing and maintaining personal hygiene, and that she could cook and "do general cleaning, laundry, and shopping," though she did "not manage money, and her driver's license [was] suspended." Id. at 214.

From October 1997 to October 2004, Bell worked, among other jobs, as a cashier at Burger King and Dunkin' Donuts and as an assembler at Fiber One, PCI Assembly, Syracuse Plastics, and Marquart. Id. at 114. Bell reported that she stopped working in October 2004 because she was having issues with her hands, back, and hips, and because she was suffering from headaches, depression, and anxiety. Id. at 123.

This appeal concerns Bell's physical and mental impairments. In particular, Bell alleges that she was disabled between November 1, 2004, and May 1, 2006, as a result of her mild intellectual disability, depression, and various physical ailments. Pl.'s Br. at 10–25. The Court now turns to the medical records related to her depression and physical issues.

*1. Depression*

On May 8, 2006, Bell was seen by NP Carolee Dornau. <u>Id.</u> at 257–58. After stating that Bell had "not seen a medical provider in the last 2 years," NP Dornau noted that "[d]epression ha[d] been a big issue for [Bell,]" who "crie[d] quite a bit." <u>Id.</u> at 258. NP Dornau further found that Bell's ability to work had been negatively affected by her depression, which apparently caused her to be "very forgetful and lack[] motivation." <u>Id.</u> at 257. Bell also reported "anger issues." <u>Id.</u> Bell and NP Dornau had a "very lengthy discussion about issues of depression likely affecting her sleep, her outbursts, and inability to focus." <u>Id.</u> NP Dornau "strongly recommend[ed] that she get a therapist." <u>Id.</u> In a write-up of a session with Bell that took place on June 15, 2006, NP Dornau took the position that work would alleviate the symptoms of Bell's depression. <u>Id.</u> at 253.

As noted above, on May 11, 2006, Dr. Shapiro performed a consultative examination of Bell. <u>Id.</u> at 206. Dr. Shapiro noted that Bell had no reported history of hospitalizations or outpatient treatment for psychiatric issues. <u>Id.</u> According to Dr. Shapiro, Bell reported that "her appetite ha[d] decreased" and that "she crie[d] a lot and d[id] not want to do anything." <u>Id.</u> at 207. Bell also claimed that she got "angry at people." <u>Id.</u> She appeared to Dr. Shapiro to be "somewhat apathetic," with "lethargic" motor behavior and poor eye contact. <u>Id.</u> at 208. Bell's "attention and concentration w[ere] mildly impaired due to depression." <u>Id.</u> Bell reportedly "spent her days doing chores, reading, watching television, and listening to the radio." <u>Id.</u> at 209. Dr. Shapiro diagnosed Bell with "Depressive Disorder NOS" and "Mild Mental Retardation," among other things. <u>Id.</u> Dr. Shapiro then concluded that Bell would "have difficulty adequately understanding and following some instructions and directions unless completing some tasks due

to a tension [sic] and concentration deficits secondary to depression." Id. Dr. Shapiro further found that Bell would benefit from psychiatric treatment. Id.

Dr. Richard Nobel performed a residual functional capacity ("RFC") assessment of Bell on June 6, 2006. Id. at 226–49. Dr. Nobel described Bell as a "33 year old female with mild mental retardation and depressive disorder." Id. at 234. He noted that Bell was "somewhat apathetic," had poor eye contact, and had some difficulty concentrating and paying attention because of her depression. Id. He echoed Dr. Shapiro's findings that Bell could dress, bathe, and groom herself in addition to being able to cook, clean, and shop. Id. He further found that while Bell was "capable of understanding, remembering and carryi[n]g out short simple instructrions [sic]," she was "moderately impaired in her ability to make simple work-related decisions, respond appropriately to supervision, co workers and work situations and to deal with changes in the routine work setting." Id. Accordingly, Dr. Nobel concluded that Bell was "capable of unskilled work activity." Id.

On July 13, 2006, Bell was seen by Dr. Laura E. Hamilton. Id. at 766–68. Dr. Hamilton found that Bell had "moderate severe" depression in addition to suffering from mood swings and sleep disturbance. Id. at 766. According to Dr. Hamilton, Bell experienced suicidal and homicidal ideation, and she appeared "apprehensive [and] anxious." Id. at 766–67. Accordingly, Dr. Hamilton prescribed Zoloft. Id. at 768. On August 4, 2006, Dr. Hamilton saw Bell again and found that she remained depressed and was beginning to have "moderate sporadic auditory [hallucinations]." Id. at 763. Dr. Hamilton told Bell to reduce her dosage of Zoloft. Id. On August 7, 2006, Dr. Hamilton mentioned Bell's depression again, though she noted that it was improving as a result of the medication. Id. at 759.

On May 10, 2011, Dr. Julian J. Clark filled out a questionnaire about Bell's mental impairments. Id. at 710–19. The form directed Dr. Clark to consider the period from "November 1, 2004 through [the] present." Id. at 714. Based on his review of the medical evidence in the record, Dr. Clark found that Bell suffered from two impairments—a learning disability and depression. Id. Further, Dr. Clark opined that these two impairments met the criteria for Listing 12.05C under 20 C.F.R. pt. 404(P), app. 1, and that Bell would experience marked limitations in activities of daily living and in maintaining social functioning, concentration, persistence, and pace. Id. at 715–16. With respect to work-related limitations, Dr. Clark said that, although Bell would experience only moderate limitations in her ability to interact appropriately with the public, she would face marked limitations in interacting appropriately with supervisors and coworkers and in "respond[ing] appropriately to usual work situations and to changes in a routine work setting." Id. at 711.

On January 19, 2015, Dr. Faren R. Akins completed a medical interrogatory related to Bell's disability status from May 1, 2006, through the present. Id. at 901–10. Dr. Akins said that there was not enough medical evidence in the record for him to opine on Bell's impairments during that time period. Id. at 906. He also noted that, while it was "possible" that Bell met the criteria for Listing 12.05C because of her intellectual disability and the diagnosis of depression, that possibility was weakened by the full-scale IQ score of 85 she obtained in high school and her work history. Id. Dr. Akins noted, however, that the record before him was "stale by more than 3 years." Id.

## 2. *Physical Ailments*

As the Court mentioned above in connection with Bell's depression, Bell does not appear to have sought much treatment for her physical ailments from November 1, 2004, to May 1, 2006. The Court will therefore discuss the medical evidence from before and after that period that may be probative of Bell's condition during the relevant dates.

On June 20, 2003, Bell saw Dr. Davidd Levy for an injury she sustained to her hand. Id. at 195. As she was opening a bottle of Lysol, she cut her right hand "on a protruding piece of plastic from the bottle." Id. She was treated and given ibuprofen. Id. On September 17, 2004, Bell went to the emergency room at St. Joseph's Hospital Health Center complaining of severe shoulder pain resulting from an altercation in which she was "knocked down by her assailant [and] pushed into a car." Id. at 183. Bell reported that she could not move her shoulder, which had been dislocated during the incident. Id. She was given an arm sling and a prescription for Lortab, id. at 183, and on October 13, 2004, she reported "feeling much better," id. at 190.

In April 2006, Bell had a face-to-face interview with a representative from the New York state disability agency. Id. at 67–70. The representative reported that Bell had no difficulty sitting, standing, walking, or using her hands. Id. at 68–69.

During the May 8, 2006 session with NP Dornau, Bell said that she was experiencing "a general sensation of her entire body hurting." Id. at 258. She further stated that her hands hurt and tingled, causing her to have trouble doing the dishes, and that "she was diagnosed with bilateral carpal tunnel syndrome." Id.

On May 11, 2006, Dr. Berton Shayevitz examined Bell. Id. at 201. Dr. Shayevitz noted that Bell told him she had been informed "sometime[] ago" that she had carpal tunnel syndrome.

Id. at 201. Moreover, Bell reported that all ten of her fingertips, but particularly those on her left hand, felt numb on occasion, apparently as a result of an automobile accident she was involved in in 1998. Id. at 201–02. After noting that Bell had a normal gait and stance, id. at 203, Dr. Shayevitz stated that she had "a full range of motion of shoulders, elbows, forearms, and wrists bilaterally," id. at 204. Dr. Shayevitz further reported that Bell's "[h]and and finger dexterity [were] intact," with "5/5" grip strength. Id. Bell's "right Tinels" was possibly positive, which suggested "possible carpal tunnel." Id. Dr. Shayevitz also found that Bell was suffering from headaches, "which may or may not be migraine." Id. at 205.

In a report concerning her July 13, 2006 session with Bell, Dr. Hamilton found that Bell suffered from "Migraine Common" and "Carpal Tunnel Syndrome left." Id. at 768. On August 24, 2006, Bell complained to Dr. Hamilton of wrist pain. Id. at 754. Dr. Hamilton found that Bell had limited range of motion in her left wrist and positive Tinel and Phalen's signs. Id. at 754. Accordingly, Dr. Hamilton recommended that Bell refrain from lifting objects and limit herself to four hours of work a day. Id. at 755. Dr. Hamilton also prescribed a course of physical therapy for Bell. Id.

**B. Procedural History**

This case began over ten years ago. Id. at 15. Bell applied for disability benefits on March 30, 2006. Id. Her application was denied on June 8, 2006, after which she timely requested a hearing before an administrative law judge ("ALJ"). Id. Bell appeared and testified at the hearing, which was held before ALJ Gale on November 29, 2007. Id. at 304. At the hearing, ALJ Gale and Bell's attorney asked her questions about her medical conditions, ability to function, and employment history. Id. at 307–37. On April 25, 2008, ALJ Gale issued a decision finding that

Bell was not disabled under the Social Security Act. Id. at 359–70. ALJ Gale found that Bell had one severe impairment—"borderline intellectual functioning." Id. at 362. After determining that Bell did not have an impairment or combination of impairments meeting or medically equaling a listed impairment, ALJ Gale found that Bell "retain[ed] the residual functional capacity during the course of an 8-hour workday to perform work at the light level of exertion with avoidance of respiratory irritants and in jobs with simple routine tasks." Id. at 364–65. ALJ Gale went on to say that Bell could not perform any past relevant work, but that there were jobs existing in significant numbers in the national economy that she could perform despite her limitations. Id. at 368–69. Accordingly, ALJ Gale concluded that Bell was not disabled from November 1, 2004, to April 25, 2008, the date of decision. Id. at 370.

After the Appeals Council denied Bell's request for review of ALJ Gale's decision, id. at 5, she appealed the decision to the Northern District of New York. Id. at 342. On April 27, 2010, Magistrate Judge Victor E. Bianchini issued a report-recommendation finding that remand was appropriate. Id. at 385–407. Judge Bianchini found that ALJ Gale erred in (1) dismissing a Dr. Shapiro's opinion, (2) failing to discuss Dr. Nobel's opinion, and (3) failing to weigh either of the opinions. Id. at 397–98. ALJ Gale's failure to adequately address these two opinions, which according to Judge Bianchini constituted the entirety of the medical evidence relevant to Bell's depression, made it impossible for the court to "determine on what evidence the ALJ relied when making his severity findings." Id. at 398. With respect to Bell's alleged physical impairments, Judge Bianchini found that ALJ Gale erred in dismissing Dr. Shayevitz's report on these impairments without adequate explanation. Id. at 399–401. Judge Bianchini then determined that ALJ Gale failed to follow the applicable procedure for weighing Bell's

credibility with respect to her allegations of pain. Id. at 403. After noting that the errors just mentioned rendered ALJ Gale's listing and RFC determinations "necessarily flawed," Judge Bianchini found further error in ALJ Gale's failure to consult a vocational expert ("VE"). Id. at 403–04. Then-Chief Judge Norman A. Mordue adopted the report-recommendation in its entirety and remanded the case for further proceedings. Id. at 383–84.

On December 1, 2010, the Appeals Council issued a remand order specifying the actions to be taken by the ALJ on remand. Id. at 410–12. The Appeals Council noted that while this case was pending, Bell had "filed a subsequent claim for [disability] benefits . . . and was found disabled beginning January 1, 2009." Id. at 410. Finding "no basis to disturb [this] determination," the Appeals Council affirmed the finding that Bell was disabled as of January 1, 2009. Id. Accordingly, the issue on remand was whether Bell was disabled before that date. Id. The remand order directed the ALJ to further consider Bell's impairments and RFC, to consult a VE, and to call on medical experts to determine whether Bell's impairments met or equaled the severity of one of the listed impairments. Id. at 410–11.

On February 17, 2012, after a hearing at which Bell appeared and testified, id. at 418, ALJ Gale issued a decision finding that Bell was disabled beginning May 1, 2006, but not before then, id. at 430. ALJ Gale found that Bell had the severe impairment of "mild mental retardation" starting November 1, 2004, and that beginning May 1, 2006, Bell had the additional severe impairment of "a depressive disorder." Id. at 421. ALJ Gale then determined that before May 1, 2006, Bell did not have an impairment meeting or medically equaling one of the listed impairments. Id. at 423–24. Accordingly, ALJ Gale stated that before that date, Bell had the RFC "to perform a full range of work at all exertional levels and to perform unskilled work," id. at

425, and could perform her past relevant work, id. at 428. However, ALJ Gale also found that, beginning May 1, 2006, Bell's impairments—her depressive disorder and her intellectual disability—met Listing 12.05C, rendering her disabled as of that date. Id. at 429–30. ALJ Gale noted that Bell could also meet the criteria for Listing 12.05C on the grounds of her intellectual disability and the physical impairments she began to suffer from as a result of a motor-vehicle accident in July 2008. Id. at 430.

Bell appealed the decision to the Appeals Council, which, on July 29, 2014, remanded the case yet again. Id. at 433–36. The Appeals Council objected to ALJ Gale's decision to discount the portion of the medical interrogatory filled out by Dr. Clark that said Bell could satisfy the criteria for Listing 12.05C from November 1, 2004, to May 1, 2006. Id. at 433. The Appeals Council noted that ALJ Gale refused to credit this part of the interrogatory "because it was not based on any evidence prior to [May 1, 2006,]" yet ALJ Gale also "gave significant weight to the June 6, 2006 [opinion] of C. Richard Noble [sic], Psy.D," even though Dr. Nobel similarly did not base his assessment on evidence predating May 1, 2006. Id. The Appeals Council also took issue with ALJ Gale's RFC determination, which it found was not supported by substantial evidence. Id. at 433–34. The problem, again, was ALJ Gale's failure to properly take account of the findings made by Dr. Clark. Id. at 434. The final issue slated for resolution on remand was the determination of the onset date, which the Appeals Council found was not supported by substantial evidence. Id. The Appeals Council directed the ALJ on remand to "[o]btain evidence from a medical expert to clarify the nature and severity of [Bell's] impairments, . . . [and] the date of onset." Id. The ALJ was also required to "further evaluate" Bell's depression before May 1, 2006, and, with respect to the period before that date, to give "further consideration" to the

10

medical opinions in the record, Bell's RFC and her subjective complaints, and the question whether she could perform her past relevant work. Id. at 434–35. Finally, the Appeals Council mandated that the ALJ "[o]btain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [Bell's] occupational base." Id. at 435.

A hearing was held on January 20, 2015, at which Bell appeared and testified. Id. at 922–43. VE David Sypher testified at the hearing that given the RFC with which he was presented, Bell could not perform her past relevant work. Id. at 938. ALJ Fein issued his decision on July 29, 2015. Id. at 342–54. ALJ Fein agreed with ALJ Gale's conclusion that from November 1, 2004, to May 1, 2006, Bell had only one severe impairment, namely, a mild intellectual disability. Id. at 345. ALJ Fein, again concurring with ALJ Gale, determined that Bell could not meet the criteria for Listing 12.05C or 12.05D before May 1, 2006. Id. at 348–49. ALJ Fein based this determination in part on the opinion offered by Dr. Akins. Id. at 348. Then, in a section of the decision that is taken almost verbatim from ALJ Gale's decision, compare id. at 425–28, with id. at 349–52, ALJ Fein found that Bell had the RFC to "perform a full range of work at all exertional levels but with the following non-exertional limitations: still able to perform simple, repetitive, routine work tasks, with no unusual demands for high stress, production fast-paced work, or complex interactions with others or changes in the work setting or decision-making," id. at 349. Directly contradicting the testimony of the VE, ALJ Fein determined that, in light of the RFC just described, Bell could perform past relevant work. Id. at 352–53. Alternatively, ALJ Fein found that "there are other jobs that exist in significant numbers in the national economy that [Bell] also can perform." Id. at 353.

Bell failed to file written exceptions to ALJ Fein's decision. Further, there is no evidence in the record that the Appeals Council initiated its own review of the decision. Accordingly, ALJ Fein's decision became the final SSA decision. Id. at 340.

### C. This Appeal

On September 28, 2015, Bell initiated this appeal by filing her Complaint. Dkt. No. 1 ("Complaint"). In her brief, she makes three primary arguments as to why ALJ Fein erred in finding that she was not disabled during the relevant time period. First, she argues that ALJ Fein committed legal error in determining that Bell did not meet the criteria for Listing 12.05C, a finding that, according to Bell, is also not supported by substantial evidence. Pl.'s Br. at 10–11. Second, Bell argues that ALJ Fein's RFC determination is not supported by substantial evidence. Id. at 19. Third, Bell claims that ALJ Fein erred in finding that she was able to perform past relevant work, and that ALJ Fein's determination that there were jobs existing in significant numbers in the national economy that Bell could perform despite her limitations is not supported by substantial evidence. Id. at 24–25.

## III.   LEGAL STANDARD

### A. Standard of Review

When a court reviews a final decision by the SSA, it determines whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence in the record. 42 U.S.C. § 405(g); Roat v. Barnhart, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn, J.) (citing Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982)). Substantial evidence amounts to "more than a mere scintilla," and it must reasonably support the decision maker's conclusion. Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S.

389, 401 (1971)). The Court defers to the ALJ's decision if it is supported by substantial evidence, "even if [the Court] might justifiably have reached a different result upon a de novo review." Sixberry v. Colvin, No. 12-CV-1231, 2013 WL 5310209, at *3 (N.D.N.Y. Sept. 20, 2013) (quoting Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)). The Court should not uphold the ALJ's decision when there is substantial evidence, but it is not clear that the ALJ applied the correct legal standards. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987). However, remand is unnecessary "where application of the correct legal principles to the record could lead to only one conclusion." Id. The Court may not "affirm an administrative action on grounds different from those considered by the agency." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (citing SEC v. Chenery Corp., 332 U.S. 194 (1947)).

### B. Standard for Benefits

According to SSA regulations, disability is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). However, an individual seeking disability benefits "need not be completely helpless or unable to function." De Leon v. Sec'y of Health & Human Servs., 734 F.2d 930, 935 (2d Cir. 1984) (quoting Gold v. Sec'y of Health, Educ. & Welfare, 463 F.2d 38, 41 n.6 (2d Cir. 1972)).

In order to receive disability benefits, a claimant must satisfy the requirements set forth in the SSA's five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(1). In the first four steps, the claimant bears the burden of proof; at step five, the burden shifts to the SSA. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir.

1996)). If the SSA is able to determine that the claimant is disabled or not disabled at any step, the evaluation ends. 20 C.F.R. § 404.1520(a)(4). Otherwise, the SSA will proceed to the next step. Id.

At step one, the SSA considers the claimant's current work activity to see if it amounts to "substantial gainful activity." Id. § 404.1520(a)(4)(i). If it does, the claimant is not disabled under SSA standards. Id. At step two, the SSA considers whether the claimant has a severe and medically determinable physical or mental impairment—or a combination of impairments that is severe—that meets the duration requirement in 20 C.F.R. § 404.1509. Id. § 404.1520(a)(4)(ii). If he or she does not have such an impairment, the claimant is not disabled under SSA standards. Id. At step three, the SSA considers the severity of the claimant's medically determinable physical or mental impairment(s) to see if it meets or equals an impairment and the requisite duration listed in 20 C.F.R. pt. 404(P), app. 1. Id. § 404.1520(a)(4)(iii). If it meets one of these listed impairments and durations, the claimant is disabled.

If, following step three, no disability determination has been made, the SSA must determine the claimant's RFC, meaning the most work the claimant is able to do given her impairments and other limitations. Id. §§ 404.1520(e), 404.1545. Then, under step four, the claimant is not disabled if the RFC reveals that the claimant can perform her past relevant work. Id. § 404.1520(a)(4)(iv). If the claimant cannot perform any past relevant work, the SSA decides at step five whether adjustments can be made to allow the claimant to work somewhere in a different capacity. Id. § 404.1520(a)(4)(v). If appropriate work does not exist, then the SSA considers the claimant to be disabled. Id.

## IV.  DISCUSSION

### A.  The Listing Determination and the Onset Date

As mentioned above, Bell argues that ALJ Fein's determination that her impairments did not meet the criteria for Listing 12.05C or 12.05D was the product of reversible legal error in addition to being unsupported by substantial evidence. Pl.'s Br. at 10–11. Bell points to ALJ Fein's failure to follow the procedure for determining disability onset date established by Social Security Ruling ("SSR") 83-20, 1983 WL 31249 (Jan. 1, 1983). Pl.'s Br. at 11–17. She also argues that Dr. Akins's testimony regarding Bell's impairments did not provide substantial evidence in support of ALJ Fein's determination regarding the listed impairments and failed to satisfy the Appeals Council's order that ALJ Fein obtain medical testimony on the nature and onset date of Bell's impairments. Id. at 17–19.

When an individual such as Bell has already been found to be disabled, and the only remaining issue is the onset date, the ALJ must follow the procedure for determining the onset date set out in SSR 83-20. DeVizzio v. Comm'r of Soc. Sec., No. 14-CV-0386, 2015 WL 2238155, at *5 (N.D.N.Y. May 12, 2015). In determining the onset date, the ALJ looks to the alleged onset date, the claimant's work history, and the relevant medical evidence. SSR 83-20, 1983 WL 31249, at *1. The ALJ begins with the onset date alleged by the claimant, id., which should be accepted "if it is consistent with all the evidence available," id. at *3. With respect to disabilities of "nontraumatic origin," such as Bell's depression, "the day the impairment caused the individual to stop work is frequently of great significance." Id. at 2. Moreover, "[i]n some cases, it may be possible, based on the medical evidence[,] to reasonably infer that the onset date of a disabling impairment(s) occurred some time prior to the date of the first recorded medical

examination." Id. at 3. That kind of inference may be necessary where "the alleged onset and the last date worked are far in the past" and contemporaneous medical records are unavailable. Id. at 2.

When the ALJ must make an inference regarding the onset date because of the lack of dispositive contemporaneous evidence, she "should call on the services of a medical advisor." Id. at 3; see also Cataneo v. Astrue, No. 11-CV-2671, 2013 WL 1122626, at *16 (E.D.N.Y. Mar. 17, 2013) ("[C]ourts have found it 'essential' for the Commissioner to consult a medical advisor where . . . a claimant does not have contemporaneous medical evidence from the period around his alleged disability onset date; the record is ambiguous with respect to onset date; and claimant's disability onset date must therefore be inferred from present medical evidence." (citing Stokes v. Comm'r of Soc. Sec., No. 10-CV-0278, 2012 WL 1067660, at *13 (E.D.N.Y. Mar. 29, 2012))). If the ALJ nevertheless cannot infer onset on the basis of the available medical evidence, "it may be necessary to explore other sources of documentation," including evidence "obtained from family members, friends, and former employees." SSR 83-20, 1983 WL 31249, at *3.

Under SSR 83-20, the ALJ must provide a "[c]onvincing rationale . . . for the date selected." Id. Where the ALJ chooses an onset date different from that alleged by the claimant, she must cite substantial evidence supporting the date. Gibson v. Astrue, No. 07-CV-2845, 2009 WL 1181251, at *2 (S.D.N.Y. Apr. 30, 2009). Accordingly, "[a]n arbitrary onset date selection will not be accepted by a reviewing court." Ahisar v. Comm'r of Soc. Sec., No. 14-CV-4134, 2015 WL 5719710, at *8 (E.D.N.Y. Sept. 29, 2015). Further, the "ALJ may not rely on the first date of diagnosis as the onset date simply because an earlier diagnosis date is unavailable."

McCall v. Astrue, No. 05-CV-2042, 2008 WL 5378121, at *18 (S.D.N.Y. Dec. 23, 2008). And the ALJ may not "rely on a lack of evidence or her mischaracterization of the available evidence as a basis for setting the onset date." Feliciano v. Colvin, No. 14-CV-5391, 2016 WL 4272375, at *8 (S.D.N.Y. Aug. 10, 2016) (citing Dhanraj v. Barnhart, No. 04-CV-5537, 2006 WL 1148105, at *7 (S.D.N.Y. May 1, 2006)).

As noted above, Bell was already been found to be disabled beginning May 1, 2006, on the ground that her mild intellectual disability and depression satisfied the criteria for Listing 12.05C. R. at 429–30. In his decision, ALJ Fein did not disturb this finding,[2] and the Commissioner does not contest it in her brief. In the remand order that preceded ALJ Fein's decision, the Appeals Council noted that it was vacating ALJ Gale's 2012 decision "only with respect to the issue of disability prior to May 1, 2006." Id. at 433. The remand order specifically directed ALJ Fein to determine the appropriate onset date in accordance with the procedure set forth in SSR 83-20. Id. at 434. It also informed ALJ Fein that he had to use a medical expert to "clarify . . . the date of onset." Id. Accordingly, ALJ Fein's primary task on remand was to properly determine the onset date of Bell's disability.

ALJ Fein committed reversible legal error in failing to determine the onset date in accordance with the applicable law. ALJ Fein rejected Bell's alleged onset date of November 1, 2004. R. at 354. He was therefore obligated to set forth a "[c]onvincing rationale . . . for the date"

---

[2] Bizarrely, ALJ Fein stated toward the end of his decision that Bell "ha[d] not been under a disability . . . from November 1, 2004, through the date of this decision." R. at 354. The date of the decision was July 29, 2015. Id. The Court takes this to be an oversight on ALJ Fein's part, since he did not purport to address the period after May 1, 2006, in the rest of his decision, and indeed he made it clear that "the period still at issue" in this case runs from November 1, 2004, to May 1, 2006. Id. at 343.

he chose, which was May 1, 2006. SSR 83-20, 1983 WL 31249, at *3. ALJ Fein noted Dr.

Clark's finding that Bell's impairments, in particular her depression and mild intellectual

disability, could satisfy the criteria for Listing 12.05C starting November 1, 2004. R. at 349. But

ALJ Fein rejected Dr. Clark's report on the grounds that it was based on evidence from after May

2006 and was inconsistent with Bell's daily activities. Id.[3] ALJ Fein similarly rejected the

November 1, 2004 onset date for the listing impairment on the basis of Bell's daily activities. Id.

at 348–49.

ALJ Fein's reliance on Bell's daily activities in rejecting the November 1, 2004 onset

date is unconvincing for two reasons. First, the evidence of daily activities on which ALJ Fein

relied to reject both Dr. Clark's assessment and the November 1, 2004 onset date is itself derived

from records that postdate May 1, 2006. To take just one example, ALJ Fein pointed out that in

August 2009, Bell "went to the casino and the fair." Id. The Court fails to see how evidence of

daily activities undertaken in August 2009 bears on whether Bell's mental impairments were

disabling from November 1, 2004, to May 1, 2006. Second, as ALJ Fein was surely aware, Bell's

impairments were already determined to meet the criteria for Listing 12.05C beginning May 1,

2006. Id. at 429–30. If Bell's daily activities after May 1, 2006, were sufficient to defeat a

disability claim for a period before that date, they also should have defeated her disability claim

---

[3] The Court notes that this passage from ALJ Fein's decision is taken verbatim from ALJ Gale's 2012 decision. Compare R. at 349, with id. at 424.

for the period when those activities were actually taking place.[4] ALJ Fein failed to even acknowledge this discrepancy.

ALJ Fein's rejection of Dr. Clark's report on the grounds that it was "based on evidence since May 2006" is also hard to comprehend. Id. at 349. After all, as the Court just discussed, ALJ Fein himself relied exclusively on evidence obtained after May 2006 to reject Dr. Clark's report. Id. These gaps in ALJ Fein's reasoning are enough to warrant remand, but there is a more fundamental problem with his determination of the onset date.

ALJ Fein erred in failing to follow the procedure for determining the onset date set out in SSR 83-20. There is indeed a lack of contemporanous evidence in the record regarding Bell's mental impairments, in particular her depression, from November 1, 2004, to May 1, 2006, a gap apparently attributable to Bell's failure to seek out medical treatment during that period. Id. at 258. After citing SSR 83-20, ALF Fein concluded that "there simply is no convincing substantial evidence to support any . . . presumable retroactivity of the later depression, of work-related severity at that earlier time." Id. at 348. But it was improper for ALJ Fein to rely solely on the absence of evidence in the record to reject the alleged onset date. Feliciano, 2016 WL 4272375, at *8 (citing Dhanraj, 2006 WL 1148105, at *7). The proper procedure when confronted by an ambiguous record in this situation is to consult a medical advisor to clarify the nature of the impairments during the relevant period. SSR 83-20, 1983 WL 31249, at *3. ALJ Fein did call on Dr. Akins to evaluate the medical record relating to Bell's mental impairments, but a review of his interrogatory reveals that ALJ Fein apparently asked him to evaluate the

---

[4] Bell was involved in a car accident in July 2008 that caused her to develop severe impairments, id. at 422, but ALJ Gale found that Bell's impairments met the criteria for Listing 12.05C starting May 1, 2006, id. at 429–30.

period from May 1, 2006 to the present. R. at 905. Bell was already found to be disabled starting that very day, and so Dr. Akin's assessment provides no insight into the period that is actually at issue in this case.

The Court also agrees with Bell's contention that ALJ Fein erred in failing to follow the remand order issued by the Appeals Council. Pl.'s Br. at 14–16. Under 20 C.F.R. § 404.977(b), the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council remand order." Failure to obey a remand order issued by the Appeals Council "can form the basis for a remand to the Commissioner." Cabibi v. Colvin, 50 F. Supp. 3d 213, 229 (E.D.N.Y. 2014) (citing 42 U.S.C § 405(g)). In this case, the Appeals Council specifically ordered ALJ Fein to "[o]btain evidence from a medical expert to clarify . . . the date of onset." R. at 434. As discussed above, despite this clear directive, ALJ Fein apparently asked Dr. Akins, the medical expert, to opine on the period beginning May 1, 2006. Id. at 905. Since the Appeals Council directed ALJ Fein to call a medical expert to examine the period *ending* May 1, 2006, his apparent failure to do so constitutes reversible legal error.

ALJ Fein further departed from the remand order by failing to address the Appeals Council's concern that ALJ Gale had applied inconsistent standards to Dr. Clark's report and Dr. Nobel's assessment. Id. at 433. The Appeals Council remanded the case for resolution of several issues, one of which was that ALJ Gale gave great weight to Dr. Nobel's assessment of Bell's mental impairments before May 1, 2006, even though Dr. Nobel, like Dr. Clarke (whose report ALJ Gale rejected), based his conclusions on evidence from after May 1, 2006. Id. The Commissioner argues that ALJ Fein did indeed obey the order to address this differential

treatment, Def.'s Br. at 15, but that is wrong. ALJ Fein simply copied verbatim the discussion of Dr. Clark's report from ALJ Gale's decision. Compare R. at 424, with id. at 349. It strains credulity to say that ALJ Fein addressed an issue raised by the Appeals Council by copying wholesale the very discussion of that issue with which the Appeals Council found fault. In any event, as explained above, ALJ Fein's rationale for rejecting Dr. Clark's report does not stand up to scrutiny.

The Commissioner also argues that "failure to comply with an order of the Appeals Council constitutes at worst harmless error," and that therefore ALJ Fein's failure to obey the remand order cannot be grounds for remand. Def.'s Br. at 9–10. The Commissioner elaborates that failure to obey a remand order issued by the Appeals Council is grounds for remand "only to the extent that the ALJ's ultimate conclusions are not supported by substantial evidence." Id. at 10. This misstates the relevant standard.

"Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson, 817 F.2d at 986. True, the failure to apply correct legal standards is not grounds for reversal "where application of the correct legal principles to the record could lead to only one conclusion." Id. But that is a much higher bar than the substantial evidence standard. Under that highly deferential standard, even if the court could, on the record before it, reach the opposite conclusion from that reached by the ALJ, it must affirm the ALJ's ruling so long as there was "such relevant evidence as a reasonable mind might accept as adequate to support [it]." Richardson v. Perales, 402 U.S. 389, 401 (1971).

The court in <u>Johnson</u> held that because substantial evidence supported a finding of either disability or no disability, the ALJ's legal error required remand. 817 F.2d at 986–87. The court was applying the rule that "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration." <u>Id.</u> at 986. If the court had meant to apply the substantial evidence standard to legal errors, it would not have remanded. Instead, since substantial evidence supported the finding of disability in that case, it would have affirmed. The Commissioner (and the cases she cites in support of her understanding of harmless error) simply misread <u>Johnson</u> in asserting that legal error is not grounds for remand if the disability determination is ultimately supported by substantial evidence.

Harmless error does not apply to the numerous legal errors committed by ALJ Fein in his determination of the onset date and the listing impairment. The Court is not convinced that ALJ Fein would have made the same findings in these areas had he applied the correct legal standards. The record contains several pieces of evidence that point toward the alleged onset date, and ALJ Fein improperly rejected evidence (such as Dr. Clark's report) that supports the alleged onset date. Thus, ALJ Fein committed reversible legal error in his discussion of the listing impairments by failing to comply with the law governing the determination of the onset date and by failing to obey the clear commands of the Appeals Council. On remand, the Commissioner must follow the procedures laid out in SSR 83-20 and the relevant case law in determining the onset date of Bell's disability.

**B. Bell's Remaining Arguments**

Because the Court orders remand on the primary issue presented by this case—the determination of the onset date—it need not address the other arguments advanced by Bell. This

is particularly so given that the bulk of Bell's remaining arguments is devoted to the question whether substantial evidence supports various determinations made by ALJ Fein. Cf. Jefferson v. Astrue, No. 06-CV-1729, 2008 WL 918473, at *15 (D. Conn. Mar. 11, 2008) ("Having concluded that a remand is necessary for the consideration of . . . additional evidence, the Court need not reach the issue of whether the ALJ's decision was supported by substantial evidence."). Since, on remand, the Commissioner is obligated to further develop the record surrounding the period at issue, additional medical and lay evidence regarding that period may be forthcoming, potentially rendering any discussion of substantial evidence here moot. Further, proper determination of the onset date will require the Commissioner to reexamine the pertinent medical evidence already in the record. See Palomar v. Comm'r of Soc. Sec., No. 11-CV-1328, 2012 WL 3609854, at *5 (M.D. Fla. Aug. 22, 2012) ("Having established that the administrative decision must be reversed and the matter remanded for additional consideration of the onset date, the Court need not address the other contentions raised by Plaintiff, other than to direct that, on remand, the ALJ consider the combined effect of all of Plaintiff's established impairments in determining the date of onset.").

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the decision of the Commissioner is **VACATED and REMANDED** for further proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      December 01, 2016
              Albany, New York

Lawrence E. Kahn
U.S. District Judge